**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANN MEYER<br><br>*Plaintiff*,<br><br>v.<br><br>GANNETT COMPANY, INC.,<br><br>*Defendant*. | Case No. 1-24-cv-09529<br><br>Judge Jorge L. Alonso |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

In her sprawling and disjointed Complaint (Dkt. 16), Plaintiff asserts that her former employer wronged her in myriad ways: it allegedly discriminated against her on several occasions between 2019 and 2023 because of her disability, age, and gender; retaliated against her for her prior lawsuit against the Company; bullied and taunted her by using a secret code language that she cannot understand; orchestrated a car accident from which she was seriously injured; spied on and stalked her by tapping her phone and hacking her YouTube channel; exposed her to noxious chemicals; and tried to steal her intellectual property and take over her small business in violation of antitrust law.

The Complaint suffers from several defects warranting dismissal. The discrimination and retaliation claims, which make up the bulk of Plaintiff's allegations, are time barred and fail to state a claim upon which relief could be granted. *See* Fed. R. Civ. P. 12(b)(6). The claims unrelated to discrimination fare no better. As an initial matter, the Complaint—which spans four years, at least three states, and conduct by several unidentified entities allegedly owned by Gannett, and which mentions at

least eight[1] seemingly unrelated laws in addition to the antidiscrimination statutes—also contains no counts, making it difficult to parse the parameters of Plaintiff's purported claims. *See* Fed. R. Civ. P. 10(b). In any event, the allegations fail to sufficiently assert a claim under any of the eight legal theories mentioned. *See* Fed. R. Civ. P. 12(b)(6).

Accordingly, and for the reasons further detailed below, Plaintiff's Complaint should be dismissed under Rule 12(b)(6) for failure to assert a cognizable claim upon which relief could be granted.

## RELEVANT FACTUAL ALLEGATIONS

According to the Complaint, the allegations in which are taken as true for purposes of this Motion to Dismiss, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), Plaintiff is "a professional journalist with disabilities." (Dkt 16, Compl. ¶ 2.) Her disabilities include physical ailments—asthma, a chronic sinus condition that makes it difficult to breathe through her nose, allergies, a lack of smell, scoliosis, and muscle weakness—as well as "cognitive disabilities" that prohibit her from learning new languages and cause her to "trip[] over her words" and misspeak by saying, for example, "'Burger King' when she means 'McDonald's.'" (*Id.* ¶¶ 50-51, 58.) According to Plaintiff, her cognitive disabilities make Plaintiff unable to understand the "hidden language" or "code" called "the Conversation" that certain unidentified individuals (the "so-called Conversationists") at Gannett use "to taunt, provoke, and exclude her." (*Id.* ¶¶ 55, 58-59.)

### *A. <u>Plaintiff's previous employment at Gannett</u>*

Plaintiff allegedly worked for an unidentified "newsroom" owned by Gannett from 2018 to 2020 in Savannah, Georgia. (Compl. ¶¶ 2, 5-6, 23.) The Complaint describes four events during this time. First, at unidentified times throughout Plaintiff's employment, Gannett allegedly used unnamed "chemicals" for unspecified purposes. (*Id.* ¶ 23.) When it did so, it told employees to leave the space. (*Id.*) Second, in 2019,

[1] In addition to the ADA, Title VII, and the Equal Pay Act, Plaintiff references the Sherman Act, the Clayton Act, OSHA, the Clean Air Act, the Copyright Act, the Illinois Eavesdropping Act, Illinois "laws prohibiting stalking and cyberstalking," and sabotage. She also makes passing reference to the First Amendment freedom of the press.

Plaintiff was seriously injured in an accident that totaled her van in Illinois. (*Id.* ¶¶ 23, 25.) She speculates that Gannett must have orchestrated the accident because, in the months leading up to it, Gannett's CEO announced a new "business hub" that "sounded a lot like the business concept the Plaintiff had created" ten years before, and because a human resources representative had previously warned her that "in six months, you'll be a disabled veteran." (*Id.* ¶¶ 23, 25, 33.) Third, Gannett did not permit Plaintiff to work remotely. (*Id.* ¶¶15, 23.) Finally, Gannett terminated her employment in March 2020. (*Id.* ¶¶ 5, 6.)

*B.* *Plaintiff's websites are tampered with*

In April 2020, about a month after her employment ended, Plaintiff re-launched her previous business, which was called L3C Chicago L3C LLC and did business as Ann Meyer Communications. (Compl. ¶ 11.) This company's website was "repeatedly hacked," though Plaintiff "doesn't know who hacked the site." (*Id.* ¶¶ 11, 85.) The Complaint, however, "raises a question of whether [Gannett] was involved in the hacking of her company's small business website . . . ." (*Id.* ¶ 45.)

Additionally, at some unidentified time, "[m]any of the Plaintiff's videos on YouTube also were tampered with [in] apparent acts of sabotage." (*Id.* ¶ 85.) Further, Plaintiff's "computer was tapped remotely during this same period." (*Id.* ¶ 90.)

*C.* *Plaintiff's interview with and job offer from The South Bend Tribune*

From April 2020 to December 2023, Plaintiff allegedly applied to "dozens" of unidentified jobs. (Compl. ¶ 16-17.) Eventually, in December 2023, the South Bend Tribune, which is allegedly owned by Gannett, interviewed Plaintiff for the job of education reporter. (*Id.* ¶¶ 6, 17.) The interview was conducted "by two males younger than her and with less relevant education and experience." (*Id.* ¶ 10.) These young men "would have been above her in the company's hierarchy." (*Id.*) During the interview, Plaintiff "made a point of discussing her physical disabilities . . . when she said she would like to be certain her workspace . . . was clean and free of allergens, contaminants, and germs." (*Id.* ¶ 13.)

The South Bend Tribune offered Plaintiff the job. (Compl. ¶¶ 6, 17.) The job would be "full-time remote work [performed] at her home in Evanston, Illinois." (*Id.* ¶ 3.) The South Bend Tribune would pay her "at an annualized rate of approximately $50,000," which was "less than the Plaintiff was earning at her last journalism job." (*Id.* ¶ 7.)

The job, however, was contingent on Plaintiff's execution of an agreement entitled Confidential Information and Invention Assignment Agreement (the "Confidentiality Agreement"). (Compl. ¶¶ 5, 12.) Plaintiff refused. (*Id.* ¶ 12, 34.) Instead of signing the agreement, she asked to "amend" the Confidentiality Agreement to eliminate any "discussion of trade secrets or highly sensitive information." (*Id.* ¶ 18.) Plaintiff believes the agreement violated antitrust law and amounted "to a hostile takeover" and a means for Gannett to obtain her intellectual property without having to pay for it. (*Id.* ¶¶ 22, 26.) She also did not want to sign the Confidentiality Agreement because it "raise[d] the possibility of the Plaintiff's demise" by stating that, in the event Plaintiff is unable to sign a patent or copyright registration because of incapacity, the Plaintiff would designate and appoint the Company as her agent for such purposes. (*Id.* ¶ 32.) Plaintiff believed that this provision meant that "Gannett might actually try to harm her in an effort to become her agent and take over her business and intellectual property." (*Id.* ¶ 33.) Ultimately, because Plaintiff refused to sign the Confidentiality Agreement, the representative of the South Bend Tribune said, "I'll just rescind the offer then." (*Id.* ¶ 12.) The offer was then rescinded. (*Id.*)

## RELEVANT PROCEDURAL HISTORY

This lawsuit is not Plaintiff's first proceeding against Gannett. On May 18, 2022, Plaintiff received her first Right to Sue Notice from the EEOC, informing her that she had 90 days from that date (until August 16, 2022) to file a lawsuit against the Company. A true and accurate copy of the Right to Sue Notice is attached to this Memorandum as Exhibit A.[2]

[2] Though a court normally considers only the face of a complaint when ruling on a Rule 12(b)(6) motion, a court also may also consider documents attached to a motion to dismiss "that are critical to the complaint

On August 15, 2022, Plaintiff timely filed her first complaint against Gannett. *See Meyer v. Gannett Company, Inc.*, N.D.Ill. Case 1:22-cv-04299, at Dkt. 1 (Aug. 15, 2022) ("Meyer I"). In *Meyer I*, Plaintiff alleged—as she does here—that Gannett discriminated against her during her employment in violation of the Americans with Disabilities Act, as amended (the "ADA"). Specifically, she asserts Gannett used "the Conversation" to bully and taunt her in a language she could not understand, exposed her to toxic chemicals in the workplace, failed to accommodate her by allowing her to work from home, invaded her privacy, wrongfully required her to sign certain documentation relating to her job, underpaid her, and sabotaged her personal YouTube channel. *See id.* at Dkt. 10, Am. Compl. (Sept. 12, 2022). The court ordered Plaintiff to amend her complaint to comply with Rule 10(b). *Meyer I*, at Dkt. 18 (Oct. 28, 2022). She did so but failed to correct the deficiencies in her complaint. *See id.* at Dkt. 23 (Dec. 12, 2022). Plaintiff then voluntarily dismissed the case, *see* Fed. R. Civ. P. 41(a), and the court dismissed it without prejudice on December 14, 2022. *See Meyer I*, at Dkt. 24 (Dec. 14, 2022). Plaintiff did not refile her complaint or appeal.

Almost two years later, in mid-2024, Plaintiff initiated a second proceeding in front of the EEOC and obtained a second right to sue letter, this one regarding the rescinded job offer in 2023. Plaintiff then filed this separate action against Gannett, asserting many of same allegations as are in her initial EEOC charge and in *Meyer I*. Though the Complaint contains no counts, Gannett understands it to assert the following claims: Gannett allegedly (1) discriminated against Plaintiff in 2020 by not allowing her to work remotely and by terminating her employment in violation of the ADA (Compl. ¶¶ 74-76); (2) discriminated

and referred to in it." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013). To be sure, a plaintiff may not "evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Here, this Court can consider the attached notice to sue because Plaintiff refers to it in her Complaint ,and it is vital to establishing the timeliness of her discrimination claims. *See Phillips*, 714 F.3d at 1020 (permitting review of documents attached to motion to dismiss that are critical to the complaint and referred to in it); *Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018) ("An ADA plaintiff must file a charge with the EEOC before bringing a court action against an employer.").

against Plaintiff on the basis of her gender and age by permitting her to be interviewed in 2023 by two males who were younger than she, in violation of the Title VII of the Civil Rights Act of 1964 ("Title VII") (*id.* ¶ 10); (3) offered Plaintiff a salary in 2023 that was less than what she previously earned at a different job, in violation the Equal Pay Act (*id.* ¶¶ 7-8, 78-79); (4) failed to hire Plaintiff in 2023 because of her disability and in retaliation for the lawsuit she filed previously (*id.* ¶¶ 80-81); (5) failed to accommodate Plaintiff during the 2023 hiring process by amending the Company's mandatory employment agreement (*id.* ¶¶ 18, 74); (6) exposed Plaintiff on unspecified occasions to unnamed "chemicals" in violation of the Occupational Safety and Health Act ("OSHA") and the Clean Air Act (*id.* ¶¶ 86-87); (7) attempted to steal Plaintiff's intellectual property and her business by having Plaintiff sign an inventions assignment agreement, in violation of federal copyright and antitrust law (*id.* ¶¶ 22, 83); and (8) spied on and stalked Plaintiff by tapping her phone and by hacking and sabotaging her YouTube page and business websites, in violation of the Illinois Eavesdropping Act, Illinois' cyberstalking law, and common tort law (*id* ¶¶ 84-85, 89-91).

## LEGAL STANDARD

A Rule 12(b)(6) motion contests the sufficiency of the complaint. To withstand such a motion, the Complaint "must not only provide the defendant with fair notice of a claim's basis, but must also establish that the requested relief is plausible on its face." *Gaytan v. City of Chicago*, No. 11 CV 8624, 2012 WL 2597932, at *2 (N.D. Ill. July 5, 2012) (citing *Ashcroft*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Though a court at this stage accepts all well-pleaded facts as true, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

## ARGUMENT

The Complaint should be dismissed for failure to assert a single claim upon which relief could be granted. FED. R. CIV. P. 12(b)(6). As explained in more detail below, the discrimination and failure-to-accommodate claims relating to Plaintiff's treatment during her employment between 2018 and 2020 are time-barred. The allegations relating to Plaintiff's rescinded employment offer in 2023 fail to assert a cognizable discrimination or retaliation claim; indeed, taking all Plaintiff's allegations as true, Gannett rescinded her offer of employment because she would not sign a mandatory employment agreement—not because of unlawful animus. Nor does Plaintiff state a claim that Gannett discriminated against her on the basis of her age or gender by having her interview with young men. A mere interaction with a person outside one's protected class is not discrimination. In any event, Plaintiff has put forth no allegation that the young men mistreated her in any way. Quite the opposite— according to the Complaint, the young men offered her the job. As for her Equal Pay claim, Plaintiff has failed to assert that she was paid less than any male colleague. Nor has she alleged sufficient facts to support a claim under OSHA, the Clean Air Act, federal copyright law, or federal antitrust law. Finally, because Plaintiff has not plausibly alleged any federal claim that can survive the pleading stage, this Court should decline to exercise supplemental jurisdiction over her state-law claims for unlawful eavesdropping, cyberstalking, and violations of state tort law.

### I. Plaintiff's discrimination claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

#### A. *Plaintiff's discrimination and retaliation claims relating to events that occurred between 2018 through 2020 are untimely.*

The ADA, like Title VII, requires a plaintiff to file her lawsuit within 90 days of receiving a right-to-sue notice from the EEOC. *See* 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 20001–5); *Lax v. Mayorkas*, 20 F.4th 1178, 1181–82 (7th Cir. 2021). The timely filing of a suit "stops the running of the [90-day] statute of limitations, though only contingently." *Elmore v. Henderson*, 227 F.3d 1009, 1011

(7th Cir. 2000). "If the suit is dismissed without prejudice, meaning that it can be refiled, then the tolling effect of the filing of the suit is wiped out, and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing." *Id.* (collecting cases). "Were this not the rule, statutes of limitations would be easily nullified. The plaintiff could file a suit, dismiss it voluntarily the next day, and have forever to refile it." *Id.* Thus, "when a suit is dismissed without prejudice, the statute of limitations is deemed unaffected by the filing of the suit, so that if the statute of limitations has run the dismissal is effectively with prejudice." *Id.*

Here, Plaintiff received a Right to Sue Notice on May 18, 2022, relating to her claims of discrimination and retaliation during her employment with Gannett from 2018 to 2020. (Ex. A.) She had 90 days—until August 16, 2022—to file a complaint relating to these allegations. Plaintiff did so, bringing *Meyer I* against Gannett on August 15, 2022. When the court later dismissed the lawsuit without prejudice on December 12, Plaintiff's 90-day window to bring these claims had expired. And Plaintiff alleges no facts that would support the equitable tolling of the 90-day period for more than two years. *See Freeman v. Travelers Companies, Inc.*, 63 F. Supp. 3d 867, 871 (N.D. Ill. 2014) ("Absent special circumstances giving rise to waiver, estoppel or equitable tolling of the 90-day period, "a failure to file a complaint within such period bars adjudication of those claims.") Accordingly, any claim Plaintiff now brings relating to alleged discrimination or retaliation during her employment with Gannett between 2018 and 2020 is time-barred and must be dismissed with prejudice. *See Elmore*, 227 F.3d at 1011 (dismissing with prejudice claims that plaintiff first brought in a timely lawsuit that was voluntarily dismissed without prejudice and that plaintiff later attempted to bring again in a separate lawsuit outside the 90-day filing window).

### B. *Plaintiff's discrimination and retaliation claims relating to Gannett's alleged failure to rehire her in 2023 should be dismissed because, taking all the allegations as true, Gannett was not motivated by unlawful animus.*

Plaintiff's claim that Gannett did not hire her in 2023 because of her disability and because she previously filed a lawsuit against the Company should be dismissed for a failure to adequately allege a claim upon which relief could be granted. To state a cognizable discrimination claim, Plaintiff must assert enough facts to plausibly allege that she was not hired for a job because of her disability or because of her protected activity under the ADA. *See Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) (affirming dismissal of pro se discrimination claims under ADA and Title VII where plaintiff "alleges she lost her job because of her [protected characteristics]" but "includes no factual allegations directly or indirectly connecting the termination with her [protected characteristics"). Though Rule 8 does not require a plaintiff to plead facts supporting each element of a prima facie employment discrimination claim, *see Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017), "[i]t is not enough for the complaint to observe only that federal law prohibits adverse employment actions." *Kaminski*, 23 F.4th at 776. "There must be some *facts* that make the [plaintiff's] contention plausible. *Id.*

Taking all of Plaintiff's allegations as true, however, she cannot meet this low bar. Notably, Plaintiff alleged repeatedly that Gannett offered her the job as an education reporter for the South Bend Tribune—the precise job that is at the heart of her failure to hire claim. (*See, e.g.*, Compl. ¶¶ 16-17.) *See Shah v. Walmart Stores, Inc.*, 3:21-CV-50277, 2022 WL 1746850, at *4 (N.D. Ill. May 31, 2022) (dismissing pro se discrimination claim based on alleged failure to hire where plaintiff asserts both that the defendant refused to hire plaintiff and that defendant offered plaintiff the job, an inconsistency which "renders the claim implausible"). Moreover, the Company allegedly rescinded the offer because Plaintiff would not sign a "required" employment agreement containing an inventions assignment agreement. (Compl. ¶¶ 12, 20.) An applicant's failure or refusal to meet a required condition precedent for the job is a legitimate, non-discriminatory reason to rescind the applicant's offer. *See e.g., Kaminski*, 23 F.4th at

777 (dismissing discrimination claim where complaint contained allegation that employer discharged plaintiff pursuant to a company policy).

*C.* *Plaintiff's failure-to-accommodate claim should be dismissed because she has not alleged a disability that prohibited her from signing the employment contract, nor an accommodation that would have been reasonable under the circumstances.*

Relatedly, Plaintiff's assertion that Gannett should have reasonably accommodated her disability during the 2023 hiring process by permitting Plaintiff to enter an amended version of the Confidentiality Agreement is insufficient to state a claim for relief. Under the ADA, employers must reasonably accommodate an applicant's qualified disability. 42 U.S.C. § 12112(b)(5)(A). The Complaint, however, falls short of asserting that Plaintiff required an amended Confidentiality Agreement as an accommodation for any of her disabilities (which include scoliosis, muscle weakness, asthma, a sinus condition, and some cognitive impairments that make it difficult for her to speak or understand new languages—nothing that prohibits her form entering a Confidentiality or Inventions Assignment Agreement). (See Compl. ¶ 18.) Rather, Plaintiff alleges that she sought an amended Agreement because she owns her own business and simply did not want to risk assigning that business's intellectual property to the Company. (*Id.* ¶¶ 18, 22.) Owning a business is not a disability that must be accommodated under the ADA.

Moreover, the only disability-related accommodation Plaintiff alleges she requested during the interview process was permission to work in an environment, such as her own residence, that is free of chemicals or allergens. (*Id.* ¶ 13.) Gannett allegedly met this accommodation by offering Plaintiff a fully remote job that she could perform at her home. (*Id.* ¶ 2.) Accordingly, Plaintiff cannot assert a failure to accommodate claim based on this accommodation request. *See Johnson v. Ne. Illinois Univ*., 23 C 13927, 2024 WL 3757136, at *3 (N.D. Ill. Aug. 12, 2024) (explaining that a "failure to accommodate claim accrues when 'when the accommodation is denied'"). At bottom, the Complaint does not allege sufficient

facts to state a claim that Gannett failed to reasonably accommodate her disabilities during the interview and hiring process in December 2023.

*D.* *Plaintiff's age and gender discrimination claims should be dismissed for failure to state a plausible claim.*

Plaintiff's assertion that Gannett discriminated against her also based on her age and gender when the Company made her "interview with two males younger than her who would be above her in the hierarchy" (Compl. ¶ 10) should also be dismissed for failure to state a claim. To state an age or gender discrimination claim under Title VII, Plaintiff must assert enough well-pleaded facts that, if taken as true, state a plausible claim that she was discriminated against on these bases. *See Kaminski*, 23 F.4th at 776 (applying same pleading standard for employment discrimination claims under both Title VII and ADA). Plaintiff has not done so. An allegation that Plaintiff merely interacted with someone outside her protected class is not sufficient to assert that she was discriminated against. *See id.* (even pleadings by pro se plaintiffs must put forth some allegation to plausibly connect an adverse action with a discriminatory motive). Plaintiff alleges no additional facts indicating that the male interviewers—or anyone else at Gannett—mistreated her in any way during the interview process because of her age or gender. (*See* Compl. ¶ 10.) Indeed, the interview allegedly ended with the young men offering Plaintiff a full-time job. (*See, e.g., id.* ¶¶ 16-17.) The job was later rescinded because Plaintiff refused to sign a necessary employment agreement—not because of her age or gender. (*Id.* ¶¶ 12, 20.) Thus, even taking the allegations as true and construing them liberally in Plaintiff's favor, she has simply not alleged a plausible age or gender discrimination claim. *See Kaminski*, 23 F.4th at 776.

*E.* *Plaintiff pleads insufficient facts to state a claim under the Equal Pay Act.*

To state a claim under the Equal Pay Act, Plaintiff had to allege that she was paid less than a male counterpart because of her sex. 29 U.S.C. § 206(d). *See Morehouse v. Canadian Nat'l Ry. Co.*, 21-CV-04213, 2025 WL 947889, at *4 (N.D. Ill. Mar. 28, 2025) (granting 12(b)(6) motion to dismiss Equal Pay

Act claim). The Complaint contains no such allegations. Rather, the Complaint alleges only that the South Bend Tribune offered Plaintiff a job in December 2023 for which it would pay her approximately $50,000.00 per year, an amount that is less than the nearly $70,000 she earned in one of her previous jobs. (Compl. ¶ 7.) The Complaint contains no allegation that the South Bend Tribune paid male reporters more than $50,000.00 for the same job, nor that it offered Plaintiff a lower salary because she is a woman. Accordingly, the Complaint lacks well pleaded facts sufficient to state an Equal Pay claim. *See Morehouse*, 21-CV-04212, 52025 WL 947889, at *5 (dismissing Equal Pay claim under Rule 12(b)(6) because bald assertions that defendant violated the Equal Pay Act by paying plaintiff less than males, without more, is not enough to "show that it is plausible, rather than merely speculative, that [the plaintiff] is entitled to relief").

**II. Plaintiff's remaining federal claims should be dismissed for failure to assert a claim under Federal Rule of Civil Procedure 12(b)(6).**

Gannett is unsure whether Plaintiff seeks to bring additional federal claims under the Sherman Act, the Clayton Act, the Copyright Act, OSHA or the Clean Air Act. Though she mentions these statutes (*see, e.g.*, Compl. ¶¶ 22, 26, 83, 86-87), the Complaint generally fails to comply with Federal Rule of Civil Procedure 10(b) by not asserting any counts to illuminate the claims she seeks to bring. (*See generally* Compl; *supra* at 2.) It is therefore unclear to Gannett whether Plaintiff seeks to assert independent claims under these legal theories or, rather, mentions them only to provide context for her other claims—*that is*, to explain why she believes she should not have had to sign the Confidentiality Agreement (because it purportedly violated antitrust and copyright law), and to explain why she sought an accommodation to work from home (because of the chemicals in newsrooms that purportedly run afoul of OSHA and the Clean Air Act). Regardless, to the extent that Plaintiff seeks to bring independent claims under these federal statutes, the claims should be dismissed because the allegations do not amount to a cognizable claim under any of these legal theories.

To state a claim under Rule 8 of the Federal Rules of Civil Procedure, Plaintiff must assert "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Plaintiff has not done so here. Though she references violations of the Copyright Act, she does not assert that any materials were copyrighted nor that any copyright was infringed. Any copyright claim should therefore be dismissed. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice" to state a claim under Rule 8). Similarly, Plaintiff raises bald assertions that the Confidentiality Agreement amounted to an "unlawful tying" under the Sherman Act and Clayton Act without alleging any additional facts to support such a statement. (*See* Compl. ¶ 22.) Thus, these allegations too are insufficient to state a claim. *See Rocha v. FedEx Corp.*, 15 F. Supp. 3d 796 (N.D. Ill. 2014) (granting motion to dismiss unlawful tying claim and explaining that "[t]o state a claim under the Sherman Act or Clayton Act, plaintiff must allege four elements: (1) the existence of a tying arrangement between two distinct products or services; (2) that defendants have sufficient economic power in the tying market to appreciably restrain free competition for the tied product or service; (3) that the tie affects a not-insubstantial amount of interstate commerce of the tied product or service; and (4) that defendants have some economic interest in the sales of the tied product or service").

Nor does Plaintiff allege sufficient facts to state a claim under OSHA or the Clean Air Act. Taking all her allegations as true, Plaintiff asserts only that an unnamed "newsroom" in Georgia used unidentified "chemicals" for unspecified purposes on unspecified occasions. These threadbare accusations are not sufficient to put Gannett on notice of this claim such that it could defend against it. *See Swanson*, 614 F.3d at 403 ("It is by now well established that a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law."); *see also McReynolds*, 694 F.3d at 885 (threadbare statements of law without factual allegations are not enough to state a claim).

### III. Plaintiff's state law claims should be dismissed for lack of jurisdiction or, alternatively, for failure to state a claim.

When a federal court "has dismissed all the claims within its original jurisdiction" then "the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010). Such should be the case here. Because (as explained above) Plaintiff's federal claims should be dismissed under Rule 12(b)(6), this court should decline to exercise supplemental jurisdiction over her state claims—cyberstalking, violations of the Illinois Eavesdropping Act, and sabotage.

In the alternative, this Court should dismiss the state law claims under Rule 12(b)(6). First, Illinois does not recognize a civil cyberstalking claim. *See* 720 ILCS 5/12–7.5 (establishing criminal, not civil, cyberstalking law); *see also Tamique v. Richardson*, 15 C 6495, 2015 WL 4755213, at *1 (N.D. Ill. Aug. 7, 2015) (declining to find that Illinois criminal cyberstalking law implies a civil remedy). In any event, Plaintiff has not sufficiently alleged that Gannett cyberstalked or eavesdropped on Plaintiff, nor that it sabotaged her websites or YouTube channel. Though the Complaint asserts that Plaintiff's computer "was tapped," and that her YouTube channel and business websites were "hacked" and "tampered with in apparent acts of sabotage" (*see* Compl. ¶¶ 11, 85, 90), the Complaint does not assert that *Gannett* took those actions. Indeed, Plaintiff admits that she "doesn't know" who took these actions. (*id.* ¶¶ 11, 85.)

## CONCLUSION

Plaintiff's Complaint is rife with defects that warrant dismissal. It contains claims that are untimely, unsupported by factual allegations, and that generally fail to state an claim upon which relief could be granted.

WHEREFORE, Defendant Gannett Company, Inc. respectfully requests that this Court enter an order dismissing Plaintiff's Complaint and granting any other relief this Court deems appropriate.

Dated: May 12, 2025

Respectfully submitted,

*/s/ Julie C. Ratliff*

Andrew S. Murphy
amurphy@taftlaw.com
Julie C. Ratliff
jratliff@taftlaw.com
Taft Stettinius & Hollister, LLP
111 E. Wacker Dr., Suite 2600
(312) 537-4011

***Counsel for Defendant***

## CERTIFICATE OF SERVICE

I hereby certify that on this date, in accordance with Federal Rule of Civil Procedure 5 and Local Rule 5.5, and in light of Plaintiff's *pro se* status, I caused a true and correct copy of the foregoing *Memorandum in Support of Defendant's Motion to Dismiss* to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants in the above-captioned matter, and served via electronic mail and USPS mail, upon the following:

Ann Meyer
3308 Central St
Evanston, IL 60201
Telephone: (847)271-0177
Email: ameyerwrtr@aol.com

Dated: May 12, 2025

By: */s/ Julie C. Ratliff*
Julie C. Ratliff